UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

BPP ILLINOIS, LLC; BPP IOWA, LLC; BPP
MICHIGAN, LLC; BPP MINNESOTA, LLC; BPP
TEXAS, LLC; BPP WISCONSIN, LLC; FFC
PARTNERSHIP, L.P.; FINE CAPITAL
ASSOCIATES, L.P.; and BUDGET PORTFOLIO
PROPERTIES, LLC,

           Plaintiffs,

   -against-

THE ROYAL BANK OF SCOTLAND GROUP PLC;
RBS CITIZENS, N.A.; and CITIZENS BANK OF
PENNSYLVANIA,

           Defendants.

Civil Action No. 1:13-cv-638-
JMF

**ORAL ARGUMENT
REQUESTED**

---

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS THE AMENDED COMPLAINT**

## TABLE OF CONTENTS

ARGUMENT ...........................................................................................................................1

I.      PLAINTIFFS' CLAIMS ARE TIME-BARRED..........................................................1

        A.      Plaintiffs Cannot Avoid Application Of New York's Borrowing Statute ..............1

        B.      Plaintiffs Were On Inquiry Notice By Mid-2008 ..................................................2

        C.      Plaintiffs Have Not Alleged Facts That Warrant Tolling .......................................5

II.     PLAINTIFFS FAIL TO STATE A CLAIM ...................................................................6

        A.      The Fraudulent Inducement And Fraud Claims (Counts 1-4) Fail ........................6

        B.      The Negligent Misrepresentation Claim (Count 5) Fails......................................11

        C.      The Breach Of Fiduciary Duty Claim (Count 6) Fails ..........................................11

III.    THE BANKRUPTCY PROCEEDINGS BAR THE BPP PLAINTIFFS' CLAIMS ........12

        A.      The Release Bars the BPP Plaintiffs' Claims ........................................................12

        B.      The BPP Plaintiffs Are Estopped From Raising Their Claims, And Lack
                Standing To Do So..................................................................................................12

IV.     THE FFC AND EQUITY PLAINTIFFS' CLAIMS FAIL FOR ADDITIONAL,
        INDEPENDENT REASONS.............................................................................................14

CONCLUSION .....................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*ACA Fin. Guar. Corp. v. Goldman, Sachs & Co.*,
106 A.D.3d 494 (N.Y. 1st Dep't 2013)..................................................................................10

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)................................................................................................................7

*Bethlehem Steel Corp. v. Fischbach & Moore, Inc.*,
641 F. Supp. 271 (E.D. Pa. 1986) ..........................................................................................5

*Burtch v. Ganz*,
405 B.R. 148 (E.D. Pa. 2009) ................................................................................................5

*Cantor v. Perelman*,
414 F.3d 440 (3d Cir. 2005)...................................................................................................2

*Cehula v. Janus Dist., LLC*,
No. 07-113, 2007 WL 3256840 (W.D. Pa. Nov. 2, 2007).....................................................6

*Conley v. Gibson*,
355 U.S. 41 (1957)...........................................................................................................6, 7

*D&K Props. Crystal Lake v. Mut. Life Ins. Co. of New York*,
112 F.3d 257 (7th Cir. 1997) ...............................................................................................14

*DiPlacido v. CFTC*,
364 F. App'x 657 (2d Cir. 2009) ...........................................................................................5

*Disabled in Action of Metro. N.Y. v. Trump Int'l Hotel & Tower*,
No. 01 Civ. 5518, 2003 WL 1751785 (S.D.N.Y. Apr. 2, 2003)............................................5

*Dongelewicz v. First Eastern Bank*,
80 F. Supp. 2d 339 (M.D. Pa. 1999) ......................................................................................4

*Dozier v. Deutsche Bank Trust Co. Americas*,
No. 09 Civ. 9865, 2011 WL 4058100 (S.D.N.Y. Sept. 1, 2011)...........................................8

*Eun Joo Lee v. Forster & Garbus LLP*,
No. 12 Civ. 420, 2013 WL 776740 (S.D.N.Y. Mar. 1, 2013) ..............................................13

*First Nat'l Bank of Jacksboro v. Lasater*,
196 U.S. 115 (1905).............................................................................................................14

*Fitch v. Radnor Industries, Ltd.*,
No. Civ. A. 90-2084, 1990 WL 150110 (E.D. Pa. Sept. 27, 1990) .......................................6

*Gleason v. Borough of Moosic*,
   15 A.3d 479 (Pa. 2011) ......................................................................................4

*Greenblatt v. Gluck*,
   No. 03 Civ. 597, 2003 WL 1344953 (S.D.N.Y. Mar.19, 2003) ................................2

*Grimes v. Fremont Gen. Corp.*,
   No. 08 Civ. 1024, 2013 WL 1187474 (S.D.N.Y. Mar. 22, 2013) ...........................11

*Hinds Cnty. v. Wachovia Bank N.A.*,
   620 F. Supp. 2d 499 (S.D.N.Y. 2009).....................................................................6

*In re Adelphia Recovery Trust*,
   634 F.3d 678 (2d Cir. 2011)..................................................................................13

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
   No. 11 MD 2262, 2013 WL 1285338 (S.D.N.Y. Mar. 29, 2013)....................3, 4, 6

*In re Refco Secs. Litig.*,
   759 F. Supp. 2d 301 (S.D.N.Y. 2010).....................................................................7

*Kant v. Columbia Univ.*,
   No. 08 Civ. 7476, 2010 WL 807442 (S.D.N.Y. Mar. 9, 2010) ................................8

*Koagel v. Ryan Homes, Inc.*,
   167 A.D.2d 822 (N.Y. 4th Dep't 1990) ...................................................................7

*Koch v. Christie's Int'l PLC.*,
   699 F.3d 141 (2d Cir. 2012)...................................................................................4

*Kunica v. St. Jean Financial, Inc.*,
   233 B.R. 46 (S.D.N.Y. 1999).................................................................................14

*Lincoln Nat'l Life Ins. Co. v. Snyder*,
   722 F. Supp. 2d 546 (D. Del. 2010)........................................................................2

*Mathews v. Kidder, Peabody & Co.*,
   260 F.3d 239 (3d Cir. 2001)...................................................................................5

*Neely v. RMS Residential Mortg. Solution, L.L.C.*,
   No. 12 Civ. 1523, 2013 WL 752636 (E.D.N.Y. Feb. 26, 2013)............................14

*Okan's Foods Inc. v. R&B Dev. Co.*,
   217 B.R. 739 (Bankr. E.D. Pa. 1998) ...................................................................13

*Oneida Motor Freight, Inc. v. United Jersey Bank*,
   848 F.2d 414 (3d Cir. 1988)..................................................................................13

*Rosenshein v. Kleban*,
    918 F. Supp. 98 (S.D.N.Y. 1996) ........................................................13

*Rut v. Young Adult Inst., Inc.*,
    74 A.D.3d 776 (N.Y. 2d Dep't 2010) ...................................................11

*Shields v. Citytrust Bancorp, Inc.*,
    25 F.3d 1124 (2d Cir. 1994)...................................................................9

*Staehr v. Hartford Fin. Servs. Group*,
    547 F.3d 406 (2d Cir. 2008)...................................................................3

*Stuart v. American Cyanamid Co.*,
    158 F.3d 622 (2d Cir. 1998)...................................................................2

*Village on Canon v. Bankers Trust Co.*,
    920 F. Supp. 520 (S.D.N.Y. 1996) ......................................................12

*Walcutt v. Clevite Corp.*,
    13 N.Y.2d 48 (1963)............................................................................15

*Zemenco, Inc. v. Developers Diversified Realty Corp.*,
    No. 03-175, 2005 WL 2545303 (W.D. Pa. Oct. 7, 2005) ........................2

## STATUTES

11 U.S.C. § 521...........................................................................................13

11 U.S.C. § 1125.........................................................................................13

28 U.S.C. § 1658(b) ......................................................................................4

N.Y. C.P.L.R. § 202 ......................................................................................2

## OTHER AUTHORITIES

Fed. R. Civ. P. 8............................................................................................7

Fed. R. Civ. P. 9(b) ...............................................................................passim

Plaintiffs are sophisticated investors who bargained at arms' length for $66 million in loans at an effective fixed interest rate.  Their business failed in the wake of the recent financial crisis, and they entered bankruptcy.  Now they are suing Defendants for damages on the theory that the loan terms were the cause of their failure.  As shown in Defendants' opening brief, the Amended Complaint should be dismissed because, among other things, (1) all of Plaintiffs' claims are untimely; (2) Plaintiffs fail to plead the elements of their claims under Fed. R. Civ. P. 9(b) or to plead any conceivable damages related to USD LIBOR; (3) the BPP Plaintiffs are estopped from asserting their claims because they failed to do so in the bankruptcy court; and (4) the FFC and Equity Plaintiffs' claims fail for numerous other independent reasons.  Plaintiffs' opposition fails to rebut any of these bases for dismissal.  The bottom line is that Plaintiffs got exactly the fixed interest rate they bargained for, and any alleged USD LIBOR suppression could not, and did not, affect that fixed rate.  Plaintiffs' belated attempt to shift the burden of their business failure to Defendants should be rejected.

## ARGUMENT

## I.    PLAINTIFFS' CLAIMS ARE TIME-BARRED

Plaintiffs' claims, which are governed by a two-year Pennsylvania statute of limitations, accrued no later than May 2008.  Because Plaintiffs waited until December 2012[1] to file their complaint, all of their claims are time-barred and subject to dismissal.

### A.    Plaintiffs Cannot Avoid Application Of New York's Borrowing Statute

A two-year Pennsylvania limitations period governs Plaintiffs' claims.  Plaintiffs are Pennsylvania entities asserting claims based on economic injuries they allegedly sustained in Pennsylvania.  Thus New York's borrowing statute requires that their claims be subject to the

---

[1]    Plaintiffs filed their initial complaint in state court on December 21, 2012.  Defendants' opening brief inadvertently misstated the date of that filing as January 28, 2013, which instead is the date the action was removed. The difference is not material to any of the arguments set forth in either party's brief.

limitations period applicable under Pennsylvania law.  *See* N.Y. C.P.L.R. § 202; *Stuart v. American Cyanamid Co.*, 158 F.3d 622, 626-27 (2d Cir. 1998).

Plaintiffs do not actually deny that they reside in Pennsylvania; nor do they contend that they reside anywhere else.  Although Plaintiffs claim to own assets in other states, *see* Pls.' Mem. Law Opp'n Defs.' Mot. Dismiss ("Opp'n") at 12 (citing Am. Compl. ¶ 54), they do not claim to reside in any of those states.  Instead, they merely object that Defendants have not "established" Plaintiffs' residence in Pennsylvania.  This ploy is not a basis to invoke New York's limitations statute and avoid its borrowing statute.  *See, e.g.*, *Greenblatt v. Gluck*, No. 03 Civ. 597, 2003 WL 1344953, at *2 (S.D.N.Y. Mar. 19, 2003) (plaintiff failed to demonstrate residence by "coyly" stating that defendant "does not know if I moved").  For each Plaintiff entity, the Amended Complaint identifies an address in Pennsylvania.  *See* Am. Compl. ¶¶ 7-17.  Plaintiffs' Pennsylvania residence is further confirmed by their bankruptcy filings, which acknowledge that Pennsylvania is the "location where [the BPP entities] have their principal offices."  *See* Ex. I ¶ 11 (Complaint).[2]  Plaintiffs do not claim residency in any other state, much less establish it; accordingly, Pennsylvania law provides the applicable limitations period.[3]

## B.   Plaintiffs Were On Inquiry Notice By Mid-2008

Plaintiffs' claim that they lacked notice of alleged USD LIBOR suppression until July 2012 is unsupportable.  Plaintiffs admit that doubts about the reliability of USD LIBOR were expressed in the media in 2007.  *See* Am. Compl. ¶ 51.  As Judge Buchwald has held, by mid-2008, prominent news outlets had published detailed reports on the subject, and Plaintiffs were on notice.  *See* Mem. Law Supp. Defs.' Mot. Dismiss Am. Compl. ("Br.") 5, 10-11; *Zemenco,*

---

[2]      Documents cited herein as Exhibits are those attached to the May 28, 2013 Declaration of David Lesser.

[3]      Plaintiffs do not claim to reside in Delaware, where they are incorporated, but doing so would not change the outcome because the relevant Delaware limitations period is three years, *see Cantor v. Perelman*, 414 F.3d 440, 440 (3d Cir. 2005) (fiduciary duty); *Lincoln Nat'l Life Ins. Co. v. Snyder*, 722 F. Supp. 2d 546, 562 (D. Del. 2010) (fraud and negligent misrepresentation), and Plaintiffs waited three and a half years to file this action.

*Inc. v. Developers Diversified Realty Corp.*, No. 03-175, 2005 WL 2545303, at *4 (W.D. Pa. Oct. 7, 2005) ("All that is required to trigger the running of the statute of limitations is sufficient information to 'awaken inquiry and direct diligence in the channel in which it will be successful.' Indeed, 'a claimant need only be put on inquiry notice by storm warnings of possible fraud.'" (citations omitted)), *aff'd*, 205 F. App'x 82 (3d Cir. 2006).

Plaintiffs' contention that they lacked notice because reports of USD LIBOR suppression did not reference "RBS specifically," Opp'n 13, misses the mark.  Even if inquiry notice required RBS-specific information—and it does not[4]—such information was readily available.  As Judge Buchwald has noted in the MDL, "[i]t was a matter of public knowledge which banks were on the USD LIBOR panel."  *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 MD 2262, 2013 WL 1285338, at *30 (S.D.N.Y. Mar. 29, 2013) ("*In re LIBOR*").

Nor is it the case, as Plaintiffs argue, that Defendants' denials of wrongdoing prevented Plaintiffs from learning of the alleged USD LIBOR suppression, or relieved Plaintiffs of their duty to inquire.  Rather, such denials "prevent the emergence of a duty to inquire or dissipate such a duty only if an investor of ordinary intelligence would reasonably rely on the statements to allay the investor's concern."  *In re LIBOR*, 2013 WL 1285338, at *29.  No such prevention occurs where, as here, "[a] person of ordinary intelligence would have understood that defendants each had a strong incentive to portray themselves as truthful."  *Id.*  In addition, "each defendant's LIBOR quotes, as well as comparable benchmarks, were available every business day, such that plaintiffs could feasibly have investigated LIBOR's accuracy.  Therefore, defendants' … assurances that all was well with LIBOR could not have been reasonably relied on by plaintiffs and thus do not excuse plaintiffs' failure to inquire."  *Id.*

---

[4]     *See Staehr v. Hartford Fin. Servs. Group*, 547 F.3d 406, 429 (2d Cir. 2008) (identifying no "categorical rule that inquiry notice can only be triggered by public pronouncements containing company-specific information").

Finally, Plaintiffs incorrectly argue that Judge Buchwald's analysis of inquiry notice in her recent opinion in the MDL has "no bearing whatsoever" on the fraud claims here.  Opp'n 16. Plaintiffs rely on a passage from Judge Buchwald's opinion in which the court describes the accrual rule applicable to claims under § 10(b) of the 1934 Securities Exchange Act as "significantly" different from the "discovery accrual" rule applicable to Commodity Exchange Act ("CEA") claims in the MDL.  *In re LIBOR*, 2013 WL 1285338, at *22.  Plaintiffs argue that this Court should apply the § 10(b) standard that Judge Buchwald rejected, but the § 10(b) accrual rule, which is set forth in 28 U.S.C. § 1658(b) and (as Plaintiffs note) requires notice of "the fact of scienter," *id.*, is likewise not operative here because Plaintiffs' claims do not arise under § 10(b).  Plaintiffs' common law claims here are instead governed by the less demanding Pennsylvania accrual rule, under which the limitations period runs as soon as "the plaintiff knows, or reasonably should know, that he or she has been injured and that the injury was caused by the conduct of another."  *Dongelewicz v. First Eastern Bank*, 80 F. Supp. 2d 339, 345 (M.D. Pa. 1999).  This Pennsylvania rule is comparable to the one Judge Buchwald applied in finding the MDL claims time-barred—namely, the Second Circuit's "inquiry notice" standard, under which the limitations period begins to run "when a plaintiff has discovered his injury."  *In re LIBOR*, 2013 WL 1285338, at *22.[5]  Plaintiffs' contention that "scienter is not an element of a

---

[5]       *See also id.* ("In short, we first ask at what point the circumstances were such that they 'would suggest to [a person] of ordinary intelligence the probability that she has been defrauded.' … If plaintiffs do not then inquire within two years, they are deemed to have knowledge of their injury at the point at which the duty to inquire arose, and the period of limitations starts to run on that date.") (quoting *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 151 (2d Cir. 2012)).  If anything, the Pennsylvania rule is more favorable to Defendants than the rule Judge Buchwald applied.  *See Gleason v. Borough of Moosic*, 15 A.3d 479, 484 (Pa. 2011) ("Pennsylvania's formulation of the discovery rule reflects a narrow approach 'to determining accrual for limitations purposes' and places a greater burden upon Pennsylvania plaintiffs vis-á-vis the discovery rule than most other jurisdictions….  The commencement of the limitations period is grounded on 'inquiry notice' that is tied to 'actual or constructive knowledge of at least some form of significant harm and of a factual cause linked to another's conduct, without the necessity of notice of the full extent of the injury, the fact of actual negligence, or precise cause.'" (citations omitted)).

CEA claim," Opp'n 16; *see id.* at 1, meanwhile, is simply wrong, *see, e.g.*, *DiPlacido v. CFTC*, 364 F. App'x 657, 661 (2d Cir. 2009).[6]

### C.    Plaintiffs Have Not Alleged Facts That Warrant Tolling

In a last-ditch effort to rescue their claims, Plaintiffs invoke Pennsylvania tolling doctrines.  But Plaintiffs did not plead fraudulent concealment or any other basis for tolling in either iteration of their Complaint, and they may not do so now.  *See Disabled in Action of Metro. N.Y. v. Trump Int'l Hotel & Tower*, No. 01 Civ. 5518, 2003 WL 1751785, at *13 (S.D.N.Y. Apr. 2, 2003) (Mukasey, J.) ("[A] claim for relief may not be amended by the briefs in opposition to a motion to dismiss." (internal quotation marks omitted)).

Even if it were not too late, Plaintiffs would bear the burden of pleading entitlement to tolling.  *See Mathews v. Kidder, Peabody & Co.*, 260 F.3d 239, 256 (3d Cir. 2001) (fraudulent concealment); *Burtch v. Ganz*, 405 B.R. 148, 157 (E.D. Pa. 2009) (discovery rule).  To plead fraudulent concealment, Plaintiffs would be required to allege "(1) 'active misleading' by the defendant, (2) which prevents the plaintiff[s] from recognizing the validity of [their] claim[s] within the limitations period, (3) where the plaintiff[s'] ignorance is not attributable to [their] lack of 'reasonable due diligence in attempting to uncover the relevant facts.'"  *Mathews*, 260 F.3d at 256.  They would be required to plead each element, including due diligence, with the particularity required under Fed. R. Civ. P. 9(b).  *See Bethlehem Steel Corp. v. Fischbach & Moore, Inc.*, 641 F. Supp. 271, 273 (E.D. Pa. 1986).  Similarly, the discovery rule "requires the plaintiff to show that he has exercised reasonable diligence in uncovering his injury" and permits tolling only "until the injured individual knows or reasonably should know that (1) he has been injured and (2) that the injury was caused by a third party."  *Burtch*, 405 B.R. at 157.

---

[6]        Plaintiffs also insist that  "Judge Buchwald's decision has no preclusive effect."  Opp'n 15.  Defendants have not suggested otherwise.  Rather, Defendants respectfully submit that Judge Buchwald's opinion is correct and counsels a similar result here.

Plaintiffs offer no specific allegations of "active misleading." The opposition points to six paragraphs of the Amended Complaint, *see* Opp'n 18, of which three offer generalized claims regarding the alleged fraud that is the centerpiece of Plaintiffs' case, rather than any independent attempt to conceal that fraud, *see* Am. Compl. ¶¶ 50, 52, 55; one rehashes a reference in RBS's CFTC settlement to concealment of Yen LIBOR manipulation, which is not at issue, *see id.* ¶ 51; and two are boilerplate assertions from Plaintiffs' recitation of their causes of action that Plaintiffs have been damaged "by the foregoing conduct," *see id.* ¶¶ 126, 132. These allegations are not remotely sufficient under Rule 9(b). *See Fitch v. Radnor Industries, Ltd.*, No. Civ. A. No. 90-2084, 1990 WL 150110, at *4 (E.D. Pa. Sept. 27, 1990) (tolling unavailable: "Plaintiff's identification of five acts of purported concealment is … deficient because the list neither identifies the timing of each act nor indicates the form of source of the misrepresentation."). In the MDL, Judge Buchwald rejected a claim of fraudulent concealment for just such a failure of pleading. *In re LIBOR*, 2013 WL 1285338, at *34.

As for due diligence, it is not even hinted at, much less alleged, in the Amended Complaint (or the opposition). *See* Br. 11 n.10. This alone dooms Plaintiffs' demand for tolling. *See Cehula v. Janus Dist.*, No. 07-113, 2007 WL 3256840, at *7 (W.D. Pa. Nov. 2, 2007) (no tolling where plaintiffs failed to "plead any facts in support of a finding of due diligence"); *Hinds Cnty. v. Wachovia Bank N.A.*, 620 F. Supp. 2d 499, 522 (S.D.N.Y. 2009) ("brief reference to 'reasonable diligence,' coupled with general allegations of secrecy and deception" did not satisfy "burden under Rule 9(b) to plead the third prong of fraudulent concealment with particularity").

## II.   PLAINTIFFS FAIL TO STATE A CLAIM

### A.   The Fraudulent Inducement (Counts 1-3) And Fraud (4-5) Claims Fail

Plaintiffs not only take the remarkable position that their claims are governed by Fed. R. Civ. P. 8, but further suggest that this Court should interpret Rule 8 according to *Conley v.*

*Gibson*, 355 U.S. 41 (1957), overruled by the Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  *See* Opp'n 4 (stating that motion to dismiss must be denied unless Plaintiffs "can prove no set of facts in support of [their] claim[s] which would entitle [them] to relief").  Rule 9(b) clearly applies to these claims sounding in fraud (as would have been true even when *Conley* was good law).  In numerous respects, Plaintiffs have failed adequately to allege the elements of their fraud claims with the particularity Rule 9(b) requires.

*First*, Plaintiffs plead no material misrepresentation of a presently existing or past fact.  Plaintiffs insist that Defendants' alleged misrepresentations concerned a "then-present fact."  Opp'n 19.  But Plaintiffs' central claim is that Defendants misrepresented "that LIBOR was an honest and accurate rate and that the Swap Agreement was necessary to protect the BPP Plaintiffs."  Am. Compl. ¶ 96.  These are matters of opinion and prediction, not fact.  *See Koagel v. Ryan Homes, Inc.*, 167 A.D.2d 822, 822 (N.Y. 4th Dep't 1990) (statement regarding future tax liability not actionable as fraud).

*Second*, Plaintiffs fail to plead the fraud itself with the requisite specificity.  As Plaintiffs' opposition brief confirms, their claim to have identified the "who, what, when, where, and how" of the supposed fraud, *In re Refco Secs. Litig.*, 759 F. Supp. 2d 301, 315 (S.D.N.Y. 2010) (internal quotation marks omitted), rests on a single presentation allegedly made on January 28, 2008, *see* Opp'n 20-22.[7]  But Plaintiffs decline to identify anyone who was present at the meeting on their behalf.  Meanwhile, the statements alleged to have been made at the meeting are all either opinions ("LIBOR was an accurate and reliable rate"); future projections ("the BPP

---

[7]       Plaintiffs also allege that the ISDA Agreement contained false promises regarding USD LIBOR. *See* Opp'n 22 (citing Am. Compl. ¶ 63). But the cited provisions have nothing to do with USD LIBOR.  Rather, Section 3(d) concerns the accuracy of documents relating to the parties' signatures and board resolutions required in the accompanying Schedule; Section 3(a)(iii) represents that each party's execution, delivery, and performance of the Swap "do[es] not violate or conflict with any law, any provision of its constitutional documents, any order or judgment … or any contractual restriction"; and Section 4(c) requires each party to comply with "applicable laws and orders … if failure so to comply would materially impair its ability to perform its obligations …."

Plaintiffs would not be able to meet their obligations"); or statements not alleged to have been false ("RBS is … regulated in the UK by the Financial Services Authority").  *See* Am. Compl. ¶¶ 59-60.  Further, contrary to Plaintiffs' contention, *see* Opp'n 20, the account of the meeting set forth in the Amended Complaint states that Defendants "made a joint presentation *to the BPP Plaintiffs*," Am. Compl. ¶ 59 (emphasis added), without mentioning the FFC or Equity Plaintiffs, as to whom the Amended Complaint thus fails utterly to satisfy Rule 9(b).[8]  The remainder of the Amended Complaint consists of generalized allegations lumping Defendants together and asserting that on unspecified dates they made misrepresentations to unnamed representatives of all Plaintiffs.  *See, e.g.*, Am. Compl. ¶ 57 (alleging that "each of RBS, RBS Citizens, and Citizens Bank told each of the BPP Plaintiffs, the FFC Plaintiff and the Equity plaintiff that … a swap agreement was absolutely necessary").[9]

*Third*, Plaintiffs fail adequately to allege that Defendants engaged in a scheme to suppress USD LIBOR.  Plaintiffs assert misleadingly that RBS has "admitted its role in the manipulation of LIBOR" through its government settlements.  Opp'n 23.  But RBS did not admit to facts relating to the manipulation of USD LIBOR, the index at issue in this case.  Rather, the

---

[8]     Having failed to include the Equity Plaintiff in describing the January 28, 2008 meeting, Plaintiffs purport to rely on the general statement that the Equity Plaintiff was "present at all discussions and negotiations concerning the swap agreement."  Am. Compl. ¶ 71.  Apart from being far too general to satisfy Rule 9(b), the statement directly contradicts Plaintiffs' claim that the January 28, 2008 presentation was made "to the BPP Plaintiffs."  Am. Compl. ¶ 59.  As to the FFC Plaintiffs, though Plaintiffs suggest otherwise, *see* Opp'n 34, the Amended Complaint fails to offer even this sort of generalized allegation.

[9]     Plaintiffs' allegation that RBS Group, not just its American subsidiaries Citizens Bank and RBS Citizens, "made … misrepresentations directly to each of the Plaintiffs," Opp'n 25, also contradicts the original Complaint, which identifies Citizens Bank and RBS Citizens, not RBS Group, as participants in the negotiations.  *See* Compl. ¶ 72 (stating that Plaintiffs "negotiat[ed] the Loan, the Swap Agreement and Guaranty with RBS Citizens and Citizens Bank").  The BPP Plaintiffs' bankruptcy filings omit *both* RBS Group *and* RBS Citizens.  The amended complaint in bankruptcy claimed, *e.g.*, that the "January 28, 2008 presentation [was] provided by Citizens."  Ex. L ¶ 31.  Plaintiffs' attempt to cure a defect identified in the initial motion to dismiss on a matter within their knowledge should be disregarded.  *See Dozier v. Deutsche Bank Trust Co. Americas*, 09 Civ. 9865, 2011 WL 4058100, at *2 (S.D.N.Y. Sept. 1, 2011) (noting "court need not accept as true allegations that conflict with a plaintiff's prior allegations"); *Kant v. Columbia Univ.*, 08 Civ. 7476, 2010 WL 807442, at *7 (S.D.N.Y. Mar. 9, 2010) (disregarding contradictory allegations "concern[ing] facts clearly within the plaintiff's knowledge").

facts admitted by RBS in the DOJ and CFTC settlements concern Yen and Swiss Franc LIBOR.

Plaintiffs also contend that whether "the manipulation of other LIBOR rates had an impact on the

integrity of USD-LIBOR" is a "question of fact," Opp'n 24, but Plaintiffs plead *zero* facts in the

Amended Complaint that would support a conclusion that manipulation of other currency

LIBORs affected USD LIBOR.[10]

    *Fourth*, Plaintiffs fail adequately to plead *scienter*.  As to RBS Group, Plaintiffs allege

principally, in conclusory fashion, that it acted "through" its subsidiaries.  *See, e.g.*, Am. Compl.

¶ 2.  To the extent Plaintiffs present allegations that RBS Group was actually involved in (or

aware of) the loan transactions at issue, *see* Opp'n 25, those allegations are not only inadequately

pled but also contradict Plaintiffs' prior filings.  *See supra* note 9.  In attempting to plead scienter

on the part of RBS Citizens and Citizens Bank, Plaintiffs state that they "believed" that RBS had

a duty to "provide its subsidiaries … accurate information regarding LIBOR," Opp'n 26, but cite

no facts or law indicating that such a duty actually existed.  Plaintiffs also contend that RBS

Citizens and Citizens Bank had a "motive to deceive and access to accurate information," *id.* at

27, without alleging any facts suggesting that RBS Citizens and Citizens Bank actually possessed

any information about USD LIBOR suppression by their overseas corporate parent.  Plaintiffs'

allegations that RBS Citizens and Citizens Bank acted with fraudulent intent rest on "speculation

and conclusory allegations" and do not "give rise to [the] strong inference of fraudulent intent"

Rule 9(b) requires.  *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)

(internal quotation marks omitted).

    *Fifth*, Plaintiffs have not pled reasonable reliance.  Plaintiffs assert that the disclaimer

they signed has no effect because it does not contain "explicit disclaimers."  Opp'n 27.  But the

---

[10]     The statements regarding USD LIBOR in the FSA notice, meanwhile, are neither admissions nor findings
of fact.  *See* Br. 16 n.12.

disclaimer covers communications providing "investment advice" or describing "the expected results" of the transactions—*exactly* the subjects about which Plaintiffs claim to have received misleading advice.  *See* Am. Compl. ¶ 57 (alleging that Defendants represented that the swap was "necessary to ensure that the BPP Plaintiffs would be able to make their debt payments").  Thus it is amply specific to preclude Plaintiffs' claim of reliance.  *See also ACA Fin. Guar. Corp. v. Goldman, Sachs & Co.*, 106 A.D.3d 494, 495 (N.Y. 1st Dep't 2013) (disclaimer effective as to "sophisticated and well-counseled entities").

*Sixth*, and finally, the Amended Complaint fails to articulate a valid theory of damages.  Plaintiffs' claims fail because the alleged USD LIBOR suppression cannot have affected the interest they paid—insofar as the net effect of the Note and the Swap was a fixed, known interest rate.  The Note required the BPP Plaintiffs to pay the floating rate, plus a fixed "credit spread" of 165 basis points.  *See* Ex. A ¶¶ 1, 3.1 (Note).  The Swap—a straightforward, industry-standard agreement—acted as a hedge, obligating Citizens Bank to pay the floating rate *back* to the BPP Plaintiffs, while the BPP Plaintiffs paid a fixed rate of 3.1625 percent to Citizens Bank.  *See* Ex. D at 2-4 (Confirmation); Ex. C ¶ 2(c) (ISDA Agreement).  The net effect was that whether USD LIBOR rose or fell, the deal guaranteed BPP a fixed interest rate of 3.1625 percent, plus the credit spread, for an effective overall fixed rate of 4.8125 percent:



Plaintiffs' opposition tries to obscure this reality by discussing the Swap as if it functioned alone, while ignoring their obligations under the related Note.  *See* Opp'n 29-30.  But

the very purpose of the Swap was to exchange a floating for a fixed rate, and as Plaintiffs' own

pleadings and the loan documents they incorporate by reference make clear, the Note and the

Swap operated in tandem to that effect as reflected in Figure 1.  *See* Ex. A ¶ 3.1; Am. Compl.

¶ 30.  Plaintiffs cannot possibly demonstrate that they were injured by any alleged suppression of

USD LIBOR.  For this reason alone, the Amended Complaint should be dismissed.

**B.      The Negligent Misrepresentation Claim (Count 5) Fails**

Plaintiffs' negligent misrepresentation claim fails to satisfy Rule 9(b) because Plaintiffs

have not adequately pled the existence of a "special relationship."  Indeed, the BPP Plaintiffs'

express contractual disclaimer in the ISDA Agreement precludes them from claiming any such

relationship.  *See* Br. 22.  Plaintiffs' opposition does not argue that the disclaimer is voidable in

connection with their negligent misrepresentation claim, although they do incorrectly make that

assertion as to their breach of fiduciary duty claim.  The argument fails as explained below.

Even without the disclaimer, the claim would fail because "without more, a standard lender-

borrower relationship is not the kind of special relationship that supports a claim of negligent

misrepresentation."  *Grimes v. Fremont Gen. Corp.*, No. 08 Civ. 1024, 2013 WL 1187474, at

*15 (S.D.N.Y. Mar. 22, 2013) (internal quotation marks omitted).  Plaintiffs plead nothing to

overcome that basic principle of New York law, *see* Opp'n 31-32, and instead rely on conclusory

assertions that, *e.g.*, unnamed "bankers" previously acted as "advisers" to Plaintiffs.  Opp'n 31

(citing Am. Compl.).  Plaintiffs cite no authority for the proposition that prior arm's-length

transactions such as are alleged could transform a lender-borrower relationship into a "special

relationship," and in any event these vague allegations are insufficient to satisfy Rule 9(b).

**C.      The Breach Of Fiduciary Duty Claim (Count 6) Fails**

Plaintiffs also fail to plead a fiduciary relationship.  *Rut v. Young Adult Inst., Inc.*, 74

A.D.3d 776, 777 (N.Y. 2d Dep't 2010).  The BPP Plaintiffs disclaimed any such relationship in

the ISDA Agreement.  Plaintiffs argue the disclaimer is voidable based on alleged fraud, *see* Opp'n 32-33, but they are wrong and fail to even address the relevant legal standards, *see* Br. 20 n.15.  And again, even leaving the disclaimer aside, Plaintiffs fail to plead that a fiduciary duty arose from this arm's-length lender-borrower transaction.  None of Plaintiffs' conclusory allegations about their relationship with Defendants overcomes the basic principle of New York law that "no fiduciary relationship arises from a long-standing debtor-creditor or creditor-guarantor relationship."  *Village on Canon v. Bankers Trust Co.*, 920 F. Supp. 520, 532 (S.D.N.Y. 1996).

## III.   THE BANKRUPTCY PROCEEDINGS BAR THE BPP PLAINTIFFS' CLAIMS

### A.   The Release Bars the BPP Plaintiffs' Claims

The BPP Plaintiffs agree that the bankruptcy released "all of their claims against Citizens Bank that are related to the Loan and the Swap," Opp'n 5 (citing Ex. M (Plan)), but contend that they may nonetheless sue RBS Citizens and RBS Group for the same allegedly interrelated conduct underlying the claims they released as to Citizens Bank.  They may not.  In order to try to plead claims against RBS Citizens and RBS Group, the Amended Complaint repeatedly treats them as indistinguishable from Citizens Bank.  Plaintiffs implausibly claim to have adopted this tactic "for brevity" rather than for "liability purposes," Opp'n 6, but they do not even attempt to address the basic estoppel principles that preclude their attempt to take inconsistent positions such that the release applies, *see* Br. 26.

### B.   The BPP Plaintiffs Are Estopped From Raising Their Claims, And Lack Standing To Do So

The BPP Plaintiffs' bankruptcy case ran from December 21, 2010 to November 15, 2012. *See* Am. Compl. ¶ 3; Ex. P (Final Decree Closing Bankr. Case (Nov. 15, 2012)).  Plaintiffs were on notice of Defendants' alleged misconduct no later than May 29, 2008.  Plaintiffs themselves

admit that they "conceivably" could have been aware of their present claims as of May 6, 2011, *see* Opp'n 13, five months before the bankruptcy court confirmed their Plan, *see* Am. Compl. ¶ 85.  They admit further that they were *actually* aware of their claims as of July 2012—while the bankruptcy was still pending.  *See* Opp'n 13.  But the BPP Plaintiffs opted *never* to disclose their claims to the bankruptcy court.

Judicial estoppel precludes the BPP Plaintiffs from asserting claims they abandoned in another court.  "The purpose of judicial estoppel is not to look for, or punish, outright lies, but 'to protect the integrity of the judicial process,'" which is at risk "not only when [a party] knowingly lies but when it takes a position in the short term knowing that it may be on the verge of taking an inconsistent future action."  *In re Adelphia Recovery Trust*, 634 F.3d 678, 696 (2d Cir. 2011).  A court "may infer an intent to mislead the bankruptcy court from … knowing nondisclosure of the claims."  *Rosenshein v. Kleban*, 918 F. Supp. 98, 105 (S.D.N.Y. 1996).

In arguing that bankruptcy disclosure requirements are questions of fact inappropriate to resolve on a motion to dismiss, *see* Opp'n 9, Plaintiffs overlook the requirements of 11 U.S.C. § 521, which places a debtor under a continuing, affirmative duty, as a matter of law, "to fully disclose all assets and interests in property," *Okan's Foods Inc. v. R&B Dev. Co.*, 217 B.R. 739, 752 (Bankr. E.D. Pa. 1998). [11]  At the same time, they mischaracterize 11 U.S.C. § 1125, under which "a debtor must disclose *any* litigation likely to arise in a nonbankruptcy contest."  *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988) (internal quotation marks omitted) (emphasis added).  Plaintiffs' cases are not to the contrary; they hold merely that when a claim is disclosed, the sufficiency of detail might be a fact issue.  *See, e.g.*, *Eun Joo Lee v. Forster & Garbus LLP,* No. 12 Civ. 420, 2013 WL 776740, at *5 (S.D.N.Y. Mar. 1, 2013).

---

[11]     *See also, e.g.*, Ex. H at 6 (BPP Texas LLC Amended Summary of Assets calling for disclosure of "other contingent and unliquidated claims of every nature").

The BPP Plaintiffs' knowing failure to disclose their claims in the bankruptcy court is no less misleading than the debtor's misrepresentation in *Kunica v. St. Jean Financial, Inc.*, 233 B.R. 46 (S.D.N.Y. 1999), that it had no such claims. *See* Br. 29-30. Nor is the BPP Plaintiffs' circumstance distinguishable based on the boilerplate reservation of rights in the Plan. *See D&K Props. Crystal Lake v. Mut. Life Ins. Co. of New York*, 112 F.3d 257, 261 (7th Cir. 1997) (stating that "a blanket reservation that seeks to reserve all causes of action reserves nothing"). Plaintiffs admit they "conceivably" could have discovered information relevant to their claims five months prior to the confirmation of the Plan. Opp'n 13. Thus "at the very least [they] may have suspected" the existence of the alleged underlying facts by then. *See Neely v. RMS Residential Mortg. Solution, L.L.C.*, No. 12 Civ. 1523, 2013 WL 752636, at *6 (E.D.N.Y. Feb. 26, 2013).

The BPP Plaintiffs' silence as to their claims in the bankruptcy court estops them from asserting those claims in this Court. Similarly, because the BPP Plaintiffs failed to disclose their claims in the bankruptcy court, and their Plan has now been confirmed, they lack standing to raise those claims here. *See First Nat'l Bank of Jacksboro v. Lasater*, 196 U.S. 115, 119 (1905).

## IV.   THE FFC AND EQUITY PLAINTIFFS' CLAIMS FAIL FOR ADDITIONAL, INDEPENDENT REASONS

Plaintiffs' assertion of claims in the name of the FFC Plaintiffs and the Equity Plaintiff is a transparent attempt to circumvent the BPP Plaintiffs' release of their claims in bankruptcy. The attempted end run fails, particularly in light of the manifest deficiencies in the claims Plaintiffs assert on behalf of these related entities.

Despite Plaintiffs' contention that the FFC Plaintiffs "have in fact alleged a fraud committed directly against them," Opp'n 36, the Amended Complaint describes only *one* specific occasion on which Defendants are alleged to have engaged in fraudulent conduct, *i.e.*, the January 28, 2008 meeting, and there is no statement in the Amended Complaint that the FFC

Plaintiffs were present on that occasion.  Thus, any claims the FFC Plaintiffs might assert are based on an alleged fraud directed at the BPP Plaintiffs—and, as a matter of law, the FFC Plaintiffs lack standing to assert any such claim.  *See Walcutt v. Clevite Corp.*, 13 N.Y.2d 48, 55 (1963); *see also* Br. 31-32.  The FFC Plaintiffs' claims also should be dismissed because the lone, conclusory allegation in the Amended Complaint regarding their supposed injury, *see* Am. Compl. ¶ 112 ("As a direct and proximate result of the defendants' fraudulent inducement, the FFC Plaintiffs suffered damages …."), fails to "assert any facts to even support the elements of the claims in the complaint," Opp'n 37; *see also* Br. 32-33.

The claims of the Equity Plaintiff also should be dismissed for additional, independent reasons.  *See* Br. 33-35.  In lieu of any specific allegation of fraudulent conduct directed at the Equity Plaintiff, the Amended Complaint presents a handful of conclusory assertions that are plainly insufficient under Rule 9(b).  As explained above, the effect of the Swap was to insulate the BPP Plaintiffs from fluctuations in USD LIBOR; thus, in deciding to invest in the BPP Plaintiffs' business venture, the Equity Plaintiff cannot have relied upon any alleged misrepresentation regarding USD LIBOR.  Finally, the Equity Plaintiff is not a party to any of the agreements at issue here, and Plaintiffs cannot plead any fiduciary or "special" relationship (or any relationship) between the Equity Plaintiff and Defendants by means of conclusory allegations like those set forth in the Amended Complaint regarding, *e.g.*, "a prolonged and sustained relationship."  *See, e.g.*, Am. Compl. ¶ 117.

## CONCLUSION

For the reasons set forth herein and in Defendants' opening brief, Plaintiffs' claims should be dismissed with prejudice.

Dated:   New York, New York          /s/ David Sapir Lesser
         June 8, 2013          David Sapir Lesser
                                            Fraser L. Hunter
                                            Jamie. S. Dycus
                                            Colin Reardon
                                            Wilmer Cutler Pickering Hale and Dorr LLP
                                            7 World Trade Center
                                            250 Greenwich Street
                                            New York, NY 10007
                                            (212) 230-8800 (phone)
                                            (212) 230-8888 (fax)
                                            david.lesser@wilmerhale.com
                                            fraser.hunter@wilmerhale.com
                                            alan.schoenfeld@wilmerhale.com
                                            colin.reardon@wilmerhale.com

Robert G. Houck
Sarah Sulkowski
Clifford Chance US LLP
31 West 52nd Street
New York, NY 10019
(212) 878-8000 (phone)
(212) 878-8375 (fax)
robert.houck@cliffordchance.com
sarah.sulkowski@cliffordchance.com

*Counsel for The Royal Bank of Scotland Group plc;
RBS Citizens, N.A.; and Citizens Bank of
Pennsylvania*