UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BPP ILLINOIS, LLC; BPP IOWA, LLC; BPP MICHIGAN, LLC; BPP MINNESOTA, LLC; BPP TEXAS, LLC; BPP WISCONSIN, LLC; FFC PARTNERSHIP, L.P.; FINE CAPITAL ASSOCIATES, L.P.; and BUDGET PORTFOLIO PROPERTIES, LLC,<br><br>      Plaintiffs,<br><br> -against-<br><br>THE ROYAL BANK OF SCOTLAND GROUP PLC; RBS CITIZENS, N.A.; and CITIZENS BANK OF PENNSYLVANIA,<br><br>      Defendants. | Civil Action No. 1:13-cv-638-JMF |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
RENEWED MOTION TO DISMISS THE AMENDED COMPLAINT**

**TABLE OF CONTENTS**

I.   PLAINTIFFS FAIL TO STATE A CLAIM ................................................................................1

    A.   Plaintiffs Fail To Plead Injury.........................................................................................1

    B.   Plaintiffs Fail To Plead A Material Misrepresentation ...........................................3

    C.   Plaintiffs Fail To Plead *Scienter* ..................................................................................4

    D.   Plaintiffs Fail To Plead Reliance ....................................................................................5

    E.   Plaintiffs Fail To Plead A Special Or Fiduciary Relationship ................................6

II.  PLAINTIFFS' CLAIMS ARE BARRED BY THEIR FAILURE
     TO DISCLOSE THEM IN BANKRUPTCY COURT .........................................................6

    A.   Plaintiffs Are Judicially Estopped ..................................................................................7

    B.   Plaintiffs Lack Standing...................................................................................................9

III. THERE IS NO PERSONAL JURISDICTION OVER RBS GROUP ..................................9

CONCLUSION.................................................................................................................................10

\* \* \*

ADDENDUM A:    *Hvizdak v. Citizens Bank of Pennsylvania*, No. 14-cv-406 (W.D. Pa. Aug. 6, 2015) (unreported case)

ADDENDUM B:    *Galope v. Deutsche Bank National Trust Company*, No. 12-cv-0323 (C.D. Cal. Jan. 12, 2015) (unreported case)

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Air & Power Transmission, Inc. v. Weingast*,
   992 N.Y.S.2d 46 (App. Div. 2014) ................................................................................6

*Azuike v. BNY Mellon*,
   962 F. Supp. 2d 591 (S.D.N.Y. 2013) ............................................................................8

*D&K Properties Crystal Lake v. Mutual Life Insurance Company of New York*,
   112 F.3d 257 (7th Cir. 1997) .........................................................................................8

*Daimler AG v. Bauman*,
   134 S. Ct. 746 (2014) ...................................................................................................10

*DeSilva v. North Shore-Long Island Jewish Health System, Inc.*,
   770 F. Supp. 2d 497 (E.D.N.Y. 2011) ...........................................................................5

*Disabled in Action of Metropolitan New York v. Trump International Hotel & Tower*,
   No. 01-cv-5518, 2003 WL 1751785 (S.D.N.Y. Apr. 2, 2003) ......................................2

*Dube-Forma v. D'Agostino*,
   877 N.Y.S.2d 740 (App. Div. 2009) ..............................................................................6

*First National Bank of Jacksboro v. Lasater*,
   196 U.S. 115 (1905) .......................................................................................................9

*Galope v. Deutsche Bank National Trust Company*,
   No. 12-cv-0323 (C.D. Cal. Jan. 12, 2015) ....................................................................2

*Galope v. Deutsche Bank National Trust Company*,
   566 F. App'x 552 (9th Cir. 2014) ..................................................................................2

*Hvizdak v. Citizens Bank of Pennsylvania*,
   No. 14-cv-406 (W.D. Pa. Aug. 6, 2015) ................................................................7, 8

*Ibok v. Siac-Sector Inc.*,
   470 F. App'x 27 (2d Cir. 2012) .....................................................................................7

*In re Adelphia Recovery Trust*,
   634 F.3d 678 (2d Cir. 2011) ..........................................................................................7

*Jazini v. Nissan Motor Company*,
   148 F.3d 181 (2d Cir. 1998) ........................................................................................10

*Kunica v. St. Jean Financial, Inc.*,
   233 B.R. 46 (S.D.N.Y. 1999) ........................................................................................8

*Mosdos Chofetz Chaim, Inc. v. RBS Citizens, N.A.*,
  14 F. Supp. 3d 191 (S.D.N.Y. 2014)...................................................................................4

*NovelAire Technologies, LLC v. Munters AB*,
  No. 13-cv-472, 2013 WL 6182938 (S.D.N.Y. Nov. 21, 2013)..............................................10

*Philbrook v. Glodgett*,
  421 U.S. 707 (1975)............................................................................................................10

*Revak v. SEC Realty Corporation*,
  18 F.3d 81 (2d Cir. 1994) ....................................................................................................1

*Rosenshein v. Kleban*,
  918 F. Supp. 98 (S.D.N.Y. 1996)........................................................................................8

*RSM Production Corporation v. Fridman*,
  643 F. Supp. 2d 382 (S.D.N.Y. 2009).................................................................................4

*Ruhrgas AG v. Marathon Oil Company*,
  526 U.S. 574 (1999)............................................................................................................10

*Sanchez v. ASA College, Inc.*,
  No. 14-cv-5006, 2015 WL 3540836 (S.D.N.Y. June 5, 2015) ............................................5

*Sinochem International Company v. Malaysia International Shipping Corporation*,
  549 U.S. 422 (2007)............................................................................................................10

*Steel Company v. Citizens for a Better Environment*,
  523 U.S. 83 (1998)..............................................................................................................10

*Stockbridge-Munsee Community v. New York*,
  756 F.3d 163 (2d Cir. 2014)................................................................................................10

*Thomas v. JP Morgan Chase, N.A.*,
  No. 11-cv-3656, 2012 WL 3230471 (E.D.N.Y. Aug. 6, 2012), *aff'd sub nom. Thomas v. Barrett, Daffin, Frappier, Turner & Engel LLP*, 532 F. App'x 10 (2d Cir. 2013)................8, 9

*Turner v. Temptu Inc.*,
  No. 11-cv-4144, 2013 WL 4083234 (S.D.N.Y. Aug. 13, 2013)............................................5

**Statutes**

11 U.S.C. § 521....................................................................................................................6

Plaintiffs argue that the Court should render no decision on the merits or on any jurisdictional question, and should instead transfer the case to the District of Massachusetts—where the case will be subject to dismissal for all of the same reasons it remains subject to dismissal here.  Defendants agree that it is not necessary for the Court to address the jurisdictional issues.  Defendants submit, however, that the most appropriate and efficient course, and the one most consistent with the instruction of the Court of Appeals in remanding this case, is to address the "other arguments" raised in Defendants' original Rule 12(b)(6) motion to dismiss and renewed herein, and on the basis of those arguments dismiss the Amended Complaint with prejudice.

## I. PLAINTIFFS FAIL TO STATE A CLAIM

### A. Plaintiffs Fail To Plead Injury

Plaintiffs have not plausibly pled that they suffered any injury as a result of alleged LIBOR manipulation.  Rather, on Plaintiffs' own version of the facts, "the net result of the loan and swap agreements was that the BPP Plaintiffs paid a fixed interest rate independent of LIBOR."  Opinion and Order at 5 n.3.  This pleading failure is alone sufficient to require dismissal of all claims.  *See Revak v. SEC Realty Corp.*, 18 F.3d 81, 89-90 (2d Cir. 1994).

In opposition, Plaintiffs repeat an argument the Court has already commented on, claiming that they "were injured because [they] would not have entered the swap agreement had they known that LIBOR would remain at an artificially low rate."  Opinion and Order at 5 n.3.  But this contention "is foreclosed by their allegations that Citizens Bank *required* the BPP Plaintiffs to enter the swap agreement as a condition of securing the loan."  *Id.*  Moreover, Plaintiffs' contention that they were wrongfully deprived of a floating LIBOR-based rate from Citizens "boils down to little more than an argument that Plaintiffs should also have gotten the

benefit of the artificially low LIBOR rate—that is, that they too should have benefited from Defendants' fraud.  Plaintiffs have no entitlement to share in the proceeds of a fraud." *Id.*

Plaintiffs also now contend in their opposition that they "sought a floating-rate loan, and could have secured one (including one tethered to an interest rate other than LIBOR) through another lender," but that supposed "false statements about LIBOR's accuracy and [the] claim that hedging against fluctuations in LIBOR was necessary, fraudulently induced the plaintiffs to finance the loan through RBS and its affiliates" at the structured fixed rate.  Pls.' Mem. Law Opp. Renewed Mot. Dismiss, ECF No. 78 ("Opp.") at 11.  Plaintiffs argue that the Court cannot address the fact question, on this motion, whether they "would have obtained alternative financing" if they had refused the one transaction they allege was offered to them by Citizens Bank.  *Id.* at 12.  But Plaintiffs have not *pled* that they sought, or could have secured, alternative floating rate financing "through another lender," *id.* at 11, much less any specifics demonstrating that they would have fared better under any such arrangement.  *See* Am. Compl. ¶¶ 56-57.[1]  Plaintiffs may not add such allegations now by including them in their brief.  *See Disabled in Action of Metro. N.Y. v. Trump Int'l Hotel & Tower*, No. 01-cv-5518, 2003 WL 1751785, at *13 (S.D.N.Y. Apr. 2, 2003).[2]

---

[1] Plaintiffs also do not argue (much less plead) that Defendants made any statements about whether Plaintiffs would be able to make their payments under any supposed alternative financing.  *See* Am. Compl. ¶ 57.  Nor does it make sense that alleged statements that LIBOR was "accurate" and "reliable" could have *dissuaded* Plaintiffs from entering into a LIBOR-tethered floating-rate loan with another lender.  And although Plaintiffs also assert that they sought and could have secured a floating-rate loan "tethered to an interest rate other than LIBOR," Opp. at 11, any alleged statements by Defendants concerning *LIBOR* would have been irrelevant to a decision by Plaintiffs whether to accept either the *fixed* rate offered by Citizens or a *non-LIBOR* floating rate with another lender.

[2] The *Galope* case, relied upon by Plaintiffs, in fact supports dismissal.  The Ninth Circuit's decision addressed whether the plaintiff possessed Article III standing, not whether she had stated a claim.  *See Galope v. Deutsche Bank National Trust Co.*, 566 F. App'x 552, 552-53 (9th Cir. 2014).  On remand, the district court held that alleged LIBOR manipulation could not have injured the plaintiff because—like Plaintiffs here—she never paid a floating rate.  *See Galope v. Deutsche Bank Nat'l Trust Co.*, No. 12-cv-0323, Slip. Op. 9 n.6 (C.D. Cal. Jan. 12, 2015) ("Plaintiff only made fixed-rate payments at the rate set by her loan documents, not a rate linked to LIBOR, and thus her injury has no potential causal link to Barclays' alleged antitrust violations.").  The reasoning of *Galope*, which required summary judgment where the plaintiff could not prove injury, applies at least as strongly here, where Plaintiffs have failed even to *plead* injury.

### B. Plaintiffs Fail To Plead A Material Misrepresentation

Plaintiffs' claims fail for an additional reason: Alleged statements about whether USD LIBOR was "accurate and reliable" could not have been material to Plaintiffs' evaluation of a fixed rate independent of LIBOR. Nor have Plaintiffs alleged any other financing option as to which such statements could have been material. *See* Mem. at 17; Section I.A, *supra*.

Plaintiffs also have not alleged with particularity that any statements by Defendants regarding the "accuracy" of USD LIBOR were actually *false*—*i.e.*, that Defendants in fact engaged in a scheme to manipulate that benchmark. *See* Mem. Law Supp. Defs.' Mot. Dismiss, ECF No. 71 ("Mem.") at 17-18. Plaintiffs complain of "false representations … at a time when defendants in fact knew that RBS and other panel banks were manipulating LIBOR," based on "RBS's own admissions in connection with regulatory settlements." *See* Opp. at 17-18. But Defendants have not admitted to manipulating *USD* LIBOR. Thus, "[m]uch of the evidence Plaintiffs cite in support of their contention that RBS manipulated U.S. Dollar LIBOR relates to other banks or to currencies other than the U.S. Dollar." Opinion and Order at 4 n.2. Even now, without acknowledging that they are doing so, Plaintiffs rely heavily on facts relating to non-USD LIBORs. *See, e.g.*, Opp. at 18-19 (describing criminal charges against UBS trader based on Yen LIBOR manipulation). Such allegations do not support Plaintiffs' claim of misconduct related to USD LIBOR.

Plaintiffs also fail plausibly to allege that *any* representation was made to them by RBS Group. Plaintiffs' conclusory assertion that Messrs. Higgins and Spence "had the full authority to enter into swap agreements on behalf of RBS," Am. Compl. ¶ 58, or otherwise were somehow "acting on behalf of RBS Group," Opp. 17, is insufficient to satisfy Rule 9(b). Plaintiffs acknowledge in their brief that RBS Group did not enter into the swap, Opp. 6, and to the extent Plaintiffs intended to plead that RBS Group was present because of an agency relationship under

New York law, they were required to allege specific *facts* establishing such a relationship. Instead, Plaintiffs rely on conclusory assertions of agency and the observation that Messrs. Higgins and Spence were employed by RBS Group's indirect subsidiaries. This is not sufficient. *See, e.g.*, *Mosdos Chofetz Chaim, Inc. v. RBS Citizens, N.A.*, 14 F. Supp. 3d 191, 215 (S.D.N.Y. 2014) ("[A] simple conclusory allegation to the effect that 'defendant A acted as defendant B's agent,' without more, would not plausibly state an agency relationship." (internal quotation marks omitted)); *RSM Prod. Corp. v. Fridman*, 643 F. Supp. 2d 382, 408 (S.D.N.Y. 2009) ("Plaintiffs' conclusory allegations regarding the agency relationship … are not sufficient to survive a motion to dismiss."). Moreover, Plaintiffs' allegation that Messrs. Higgins and Spence represented RBS Group is contradicted by the original complaint. Notwithstanding Plaintiffs' argument that the contradiction creates "an issue of fact" inappropriate for resolution on a motion to dismiss, Opp. 17, courts commonly reject such contradictory allegations at this stage, *see* Mem. at 19 n.7.[3]

### C. Plaintiffs Fail To Plead *Scienter*

Plaintiffs also plead no facts in the Amended Complaint (and point to none in their brief) to support a finding that RBS Citizens had knowledge of any alleged USD LIBOR-related misconduct of its indirect corporate parent. As this Court noted in its Opinion and Order, *see id.* at 5 n.3, and as Plaintiffs appear to recognize, *see* Opp. at 20 & n.9, RBS Group's alleged knowledge of USD LIBOR manipulation may not be imputed to RBS Citizens absent a duty to report that knowledge. And while Plaintiffs contend that they "reasonably believed" that RBS

---

[3] Plaintiffs cite Judge Buchwald's recent ruling in the USD LIBOR case that "a counterparty to an interest rate swap has a duty to disclose what he knows of the distortion of an interest rate." Opp. 18 (quoting *In re LIBOR-Based Fin. Instruments Antitrust Litig.* ("*LIBOR IV*"), No. 11-md-2262, 2015 WL 4634541, at *51 (S.D.N.Y. Aug. 4, 2015)). The reference is inapposite. RBS Group and RBS Citizens were not counterparties to the swap, and the BPP Plaintiffs do not (and cannot) assert any claims against their counterparty Citizens Bank, as to which they expressly released all claims in bankruptcy. *See* Lesser Decl. Ex. M (Plan).

Citizens was under a duty to disclose certain information regarding LIBOR, Am. Compl. ¶ 55, they offer no legal support (and there is none) for the notion that their supposed unilateral expectation was sufficient to create the duty they describe. To the extent Plaintiffs allege that U.K.-based holding company RBS Group had knowledge of swap transactions entered into by its U.S.-based indirect subsidiary, *see* Opp. 19-20, those allegations not only are inadequately pled but also contradict Plaintiffs' prior filings. *See* Mem. at 18-19. Finally, to the extent Plaintiffs now seek to establish motive based on "motive and opportunity," Plaintiffs' contention that Defendants were "motivated by financial gain," Opp. 20-21, is insufficient to do so as a matter of law, *see DeSilva v. North Shore-Long Isl. Jewish Health Sys., Inc.*, 770 F. Supp. 2d 497, 528 (E.D.N.Y. 2011) (noting that "generalized profit motive that could be imputed to any company … has been consistently rejected as a basis for inferring fraudulent intent"), *accord Sanchez v. ASA Coll., Inc.*, No. 14-cv-5006, 2015 WL 3540836, at *8 (S.D.N.Y. June 5, 2015) (Furman, J.).

### D.    Plaintiffs Fail To Plead Reliance

The fraud and negligent misrepresentation claims also fail because Plaintiffs do not (and cannot) plead reasonable reliance. Plaintiffs cannot have relied on representations about the "accuracy" and "reliability" of a benchmark that was irrelevant to their obligation to pay a fixed interest rate. Plaintiffs also disclaimed any such reliance. They now argue that the disclaimer in the swap is ineffective because it does not "track[] the substance of the alleged misrepresentations." Opp. at 22 (internal quotation marks omitted). But in entering into the swap, Plaintiffs represented that they had made "independent decisions to enter into that Transaction and as to whether that Transaction is appropriate or proper for [them]," and disclaimed any reliance on "any communication (written or oral) of the other party as investment advice or as a recommendation to enter into that Transaction." Lesser Decl. Ex. C. Such language "tracks"—and precludes—their current claim to have relied on alleged representations

that the swap was "necessary to ensure that [they] would be able to make their debt payments." Am. Compl. ¶ 57.

### E. Plaintiffs Fail To Plead A Special Or Fiduciary Relationship

Plaintiffs' negligent misrepresentation and fiduciary duty claims fail because their conclusory assertion of a "special relationship," Opp. 23, cannot substitute for pleading facts sufficient to establish that the loan-and-swap deal was other than an arm's-length creditor-debtor transaction from which, under well-established New York law, no "special" or fiduciary duty arose. *See* Mem. at 22; *Turner v. Temptu Inc.*, No. 11-cv-4144, 2013 WL 4083234, at *8 (S.D.N.Y. Aug. 13, 2013) (Furman, J.) (fiduciary duty "not to be lightly implied").

Plaintiffs also expressly disclaimed any such fiduciary or special relationship in the swap. *See* Mem. at 23-24; *Air & Power Transmission, Inc. v. Weingast*, 992 N.Y.S.2d 46, 48 (App. Div. 2014) (contractual disclaimers "conclusively established" defense to fiduciary duty claim). There is no support for Plaintiffs' contention that the disclaimer is voidable. *See* Opp. at 23-24. Plaintiffs have failed to plead fraud for multiple reasons, as stated herein; nor have they even attempted to satisfy the legal standard under New York law for a finding that the disclaimer was fraudulently procured. *See* Mem. at 21 n.8. Finally, Plaintiffs' argument that their disclaimer of any fiduciary duty is ineffective because "a fiduciary relationship exists," Opp. at 23, puts the cart before the horse. There is no fiduciary relationship in this case *because* of the disclaimer—among other independently sufficient reasons.[4]

### II. PLAINTIFFS' CLAIMS ARE BARRED BY THEIR FAILURE TO DISCLOSE THEM IN BANKRUPTCY COURT

Despite the requirement of bankruptcy law that they disclose and schedule all of their assets, including pre-petition claims, *see* 11 U.S.C. § 521(a)(1)(B)(i), (iii), the BPP Plaintiffs

---

[4] Plaintiffs' reliance on *Dube-Forma v. D'Agostino*, 877 N.Y.S.2d 740 (App. Div. 2009), is misplaced. The case concerned an "as is" disclaimer in a real estate sale contract, not a disclaimer of a fiduciary relationship.

failed to disclose *any* of their purported claims based on LIBOR manipulation while their bankruptcy case was pending. Plaintiffs are thus barred by the twin doctrines of judicial estoppel and standing from pursuing those claims in this Court. In *Hvizdak v. Citizens Bank of Pennsylvania*, No. 14-cv-406 (W.D. Pa. Aug. 6, 2015), a recent decision concerning similar claims that alleged LIBOR manipulation forced commercial borrowers into bankruptcy, the court held that the failure to disclose such claims in the bankruptcy proceeding barred their assertion later. The result here should be the same.

### A.  Plaintiffs Are Judicially Estopped

"The purpose of judicial estoppel is not to look for, or punish, outright lies, but to protect the integrity of the judicial process," which is threatened "not only when [a party] knowingly lies but when it takes a position in the short term knowing that it may be on the verge of taking an inconsistent future action." *In re Adelphia Recovery Trust*, 634 F.3d 678, 696 (2d Cir. 2011) (internal quotation marks omitted). The doctrine is "commonly applied in order to prevent a party who failed to disclose a claim in bankruptcy proceedings from asserting that claim after emerging from bankruptcy." *Ibok v. Siac-Sector Inc.*, 470 F. App'x 27, 28 (2d Cir. 2012).

Here, Plaintiffs admit they "conceivably" could have been aware of their purported LIBOR-based claims by May 6, 2011, *see* Defs.' Mem. Law Opp. Mot. Dismiss, ECF No. 32, at 13, five months before the bankruptcy court confirmed their Plan, *see* Am. Compl. ¶ 85. The admission is consistent with recent decisions finding that plaintiffs were on notice of similar claims in a similar timeframe. *See* Mem. at 27. Plaintiffs admit further that they were *actually* aware of their claims as of July 2012, while the bankruptcy case was still pending. *Id*. But Plaintiffs opted never to disclose their claims to the other parties to the bankruptcy proceedings or to the bankruptcy court. Accordingly, they are estopped from asserting those claims now.

No different conclusion is required by the boilerplate reservation of rights in Plaintiffs' bankruptcy plan.  *See* Opp. at 24-26.  Courts of this district have held that a debtor "may not … rely on a general retention clause to preserve undisclosed causes of action known to him when he filed for bankruptcy."  *Rosenshein v. Kleban*, 918 F. Supp. 98, 103 n.4 (S.D.N.Y. 1996); *see also D&K Props. Crystal Lake v. Mutual Life Ins. Co. of New York*, 112 F.3d 257, 261 (7th Cir. 1997) ("A blanket reservation that seeks to reserve all causes of action reserves nothing."); *Kunica v. St. Jean Fin., Inc.*, 233 B.R. 46, 56 (S.D.N.Y. 1999) (holding "vague references" to post-confirmation claims were insufficient because they did not "disclose the substance, nature and value of the Claims against the Defendants").

The cases relied upon by Plaintiffs are not to the contrary.  Indeed, in *In re Perry H. Koplik & Sons, Inc.*, the court recognized that judicial estoppel may bar "a debtor who has failed to disclose a claim *for his own benefit* from subsequently asserting that claim *after* emerging from bankruptcy."  357 B.R. 231, 247 (Bankr. S.D.N.Y. 2006) (emphasis in original).  That is precisely what happened here.  In *In re I. Appel Corp.*, the court held that pre-confirmation claims were preserved where the debtor's disclosure statement noted that the debtor was investigating claims against the specific defendant based on specific conduct.  300 B.R. 564, 570 (S.D.N.Y. 2003).  Here, by contrast, Plaintiffs disclosed nothing at all concerning potential claims against RBS Group or RBS Citizens concerning LIBOR manipulation.

Nor is there any merit to Plaintiffs' contention that the Court may not decide the question of judicial estoppel on a motion to dismiss.  *See* Opp. at 25-26, 28.  Numerous courts have done just that.  *See, e.g.*, *Hvizdak*, No. 14-cv-406, slip op. at 11-13; *Azuike v. BNY Mellon*, 962 F. Supp. 2d 591, 599 (S.D.N.Y. 2013); *Thomas v. JP Morgan Chase, N.A.*, No. 11-cv-3656, 2012

WL 3230471, at *1 (E.D.N.Y. Aug. 6, 2012), *aff'd sub nom. Thomas v. Barrett, Daffin, Frappier, Turner & Engel LLP*, 532 F. App'x 10 (2d Cir. 2013).

### B. Plaintiffs Lack Standing

The same facts that support judicial estoppel deprive the BPP Plaintiffs of standing to pursue their undisclosed pre-petition claims. Claims that are not disclosed do not revert to the debtor at the conclusion of the bankruptcy proceeding, but instead remain the property of the estate. *See Thomas*, 532 F. App'x at 11. Because the BPP Plaintiffs failed to disclose their claims in the bankruptcy court, and their Plan was then confirmed, they lack standing to raise those claims here. *See First Nat'l Bank of Jacksboro v. Lasater*, 196 U.S. 115, 119 (1905).

### III. THERE IS NO PERSONAL JURISDICTION OVER RBS GROUP

As Plaintiffs acknowledge, it is their burden to demonstrate the existence of personal jurisdiction. *See* Opp. at 9. Although Plaintiffs purported to reserve an argument that RBS Group is subject to general jurisdiction in New York, *see* Mem. Law Supp. Mot. Transfer, ECF No. 56, at 1 n.1, they do not actually advance any such argument in their opposition brief, instead simply acknowledging Judge Buchwald's recent contrary holding and asking the Court to transfer the case to Massachusetts, *see* Opp. at 3-4. Nor do Plaintiffs actually argue that RBS Group has waived any personal jurisdiction defense, instead citing the transcript of a recent status conference and vaguely expressing an intention to make the argument at some future time. *See id.* at 4. That Plaintiffs have elected not to advance such arguments is unsurprising, because doing so would defeat their main objective: to have this case heard in another district.

As set forth in Defendants' renewed motion to dismiss, no basis exists to transfer this case to the District of Massachusetts, where it will be equally subject to dismissal. *See* Mem. at 8-14. Defendants do agree with Plaintiffs, however, that this Court need not address the question of personal jurisdiction. It is certainly true that "a federal court *generally* may not rule on the

merits of a case without first determining that it has jurisdiction." Opp. at 8 (emphasis added, internal quotation marks omitted). But where, as here, jurisdiction is uncontested as to at least one defendant, and the case is subject to dismissal on generally applicable grounds, a court may proceed to the merits. *See Philbrook v. Glodgett*, 421 U.S. 707, 721-22 (1975); *Stockbridge-Munsee Community v. New York*, 756 F.3d 163, 166 (2d Cir. 2014).[5]

To the extent the Court finds it necessary to reach the jurisdictional issue, there is no basis to exercise general or specific personal jurisdiction over RBS Group in either New York or Massachusetts. RBS Group is a U.K.-based public holding company with a principal place of business in Edinburgh, and accordingly is not "at home" in either forum under the test for general jurisdiction set forth by the Supreme Court in *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014). Plaintiffs' conclusory and inconsistent allegations regarding Mr. Higgins—whose employment by RBS Citizens, RBS Group's indirect subsidiary, Plaintiffs do not dispute—are insufficient to support either a finding of specific jurisdiction or a grant of jurisdictional discovery. *See* Mem. at 10-11 (addressing specific jurisdiction); *see also Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998) (no jurisdictional discovery based on conclusory allegations); *NovelAire Techs., LLC v. Munters AB*, No. 13-cv-472, 2013 WL 6182938, at *13 (S.D.N.Y. Nov. 21, 2013) (same). Finally, Judge Buchwald's ruling that personal jurisdiction exists "in plaintiffs' home fora," Opp. at 9, is unhelpful to Plaintiffs, who have never claimed to reside in Massachusetts.

## CONCLUSION

For the reasons set forth herein, Plaintiffs' claims should be dismissed with prejudice.

---

[5] The cases cited by Plaintiffs do not limit *Philbrook*. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007) (federal court "generally" may not rule on merits without first establishing jurisdiction); *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 575 (1999) (federal court "generally" required to consider jurisdiction first); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 99-100 (1998) (noting *Philbrook* exception).

| | |
|---|---|
| Dated: New York, New York<br>August 14, 2015 | /s/ David Sapir Lesser<br>David Sapir Lesser<br>Fraser Hunter<br>Jamie Dycus<br>Colin Reardon<br>Wilmer Cutler Pickering Hale and Dorr LLP<br>7 World Trade Center<br>250 Greenwich Street<br>New York, NY 10007<br>(212) 230-8800 (phone)<br>(212) 230-8888 (fax)<br>david.lesser@wilmerhale.com<br>fraser.hunter@wilmerhale.com<br>jamie.dycus@wilmerhale.com<br>colin.reardon@wilmerhale.com<br><br>*Counsel for The Royal Bank of Scotland Group plc; RBS Citizens, N.A.; and Citizens Bank of Pennsylvania* |